UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM KLEIN,

   Plaintiff,

v.

TORREY POINT GROUP, LLC,

   Defendant.

---

Case No. 12 Civ. 1190 (KPF)
ECF Case

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**DENTONS US LLP**
Neil A. Capobianco
Lindsay F. Ditlow
1221 Avenue of the Americas, Suite 2500
New York, New York  10020
Tel:  (212) 398-5781
Fax:  (212) 768-6800
neil.capobianco@dentons.com
lindsay.ditlow@dentons.com

*Attorneys for Defendant Torrey Point Group, LLC*

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................... i

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 2

ARGUMENT .................................................................................................................................. 6

    1.    Summary Judgment Standard is Met ............................................................................. 6

    2.    Plaintiff is Exempt from the FLSA's Overtime Requirements as He was an Administrative Employee ............................................................................................... 7

    3.    Plaintiff is Not Entitled to Any Severance Payment as Plaintiff Did *Not* Sign the Separation Agreement and General Release ................................................................. 11

    4.    Torrey Point is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claims ........................................................................................................................... 12

        a.    Plaintiff did not earn the commissions sought in his complaint under the terms of Plaintiff's offer of employment. ........................................................ 12

        b.    Plaintiff was Not an Employee at the Time Bonuses were Paid and Thus is Not Entitled to a Bonus under Defendant's Bonus Plan ......................... 15

    5.    As the Offer of Employment and Separation Agreement Govern Plaintiff's laims, Plaintiff Cannot also Have a Quantum Meruit Claim ........................................... 15

CONCLUSION ............................................................................................................................ 16

17753206\V-1

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)..................................................7

*Business Incentives Co., Inc. v. Sony Corp. of America*,
   397 F. Supp. 63 (S.D.N.Y. 1975) ..................................................................................13

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001)..............................................................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)..................................................7

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012).................................................................................................10

*Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*,
   70 N.Y.2d 382 (1987)...................................................................................................16

*Clinchy v. Grandview Dairy, Inc.*,
   262 A.D. 51 (1st Dept. 1941).......................................................................................13

*Cronin v. Aetna Life Ins. Co.*,
   46 F.3d 196 (2d Cir. 1995).............................................................................................7

*Del. & Hudson Ry. Co. v. Consol. Rail Corp.*,
   902 F.2d 174 (2d Cir. 1990)...........................................................................................7

*IDT Corp. v. Morgan Stanley Dean Winter & Co.*,
   12 N.Y.3d 132 (N.Y. App. Div. 2009) .........................................................................16

*Karmilowicz v. Hartford Financial Serv.*,
   2011 WL 2936013 (S.D.N.Y. Jul., 14, 2011)...............................................................15

*Kaul v. Hanover Direct, Inc.*,
   296 F. Supp. 2d 506 (S.D.N.Y. 2004)..........................................................................12

*Mott v. Good Roads Machinery Co. of New York, Inc.*,
   277 A.D. 677 (3d Dept. 1951) .....................................................................................12

*O'Dell v. Trans World Entm't Corp.*,
   153 F. Supp. 2d 378 (S.D.N.Y. 2011)..........................................................................15

*Romero v. H.B. Automotive Group, Inc.*,
   2012 WL 1514810 (S.D.N.Y. May 1, 2012) ...............................................................11

17753206\V-1

*Sommer v. Edward Ermold Co.*,
   275 A.D. 629 (1st Dept. 1949)..................................................................................12

*Tagare v. Nynex Sys. Co.*,
   921 F. Supp. 1146 (S.D.N.Y. 1996)..........................................................................12

*Zacholl v. Fear & Fear, Inc.*,
   2004 WL 725964 (N.D.N.Y. Apr. 5, 2004)................................................................9

**STATUTES**

29 U.S.C. §207.................................................................................................................7

29 U.S.C. §213.................................................................................................................7

**OTHER AUTHORITIES**

29 C.F.R. §541.201(a)......................................................................................................8

29 C.F.R. §541.202(a)......................................................................................................8

29 C.F.R. §541,202(c)......................................................................................................9

Fed. R. Civ. P. 56.............................................................................................................6

Defendant Torrey Point Group, LLC ("Defendant" or "Torrey Point"), by and through its undersigned counsel, Dentons US LLP, hereby files their Motion for Summary Judgment against plaintiff William Klein ("Plaintiff" or "Klein") pursuant to Federal Rule of Civil Procedure ("FRCP") 56(a).

## INTRODUCTION

In his Complaint, dated February 11, 2012 (the "Complaint"), Plaintiff alleges claims under (i) the Fair Labor Standards Act ("FLSA") for overtime; (ii) Employee Retirement Income Security Act ("ERISA") for severance payment; (iii) breach of contract for unpaid commissions and bonus allegedly earned; (iv) unpaid wages under New York's Labor Law ("NYLL"); and (v) quantum meruit.

Torrey Point seeks summary judgment on Plaintiff's claims for overtime pursuant to the FLSA and New York Labor Law on the grounds that Plaintiff was an account manager exempt from the FLSA pursuant to the administrative exemption. The admissible evidence regarding Plaintiff's commission claim demonstrates that Plaintiff is not due any commission beyond what he has already been paid because he did not do all of the work necessary to earn the additional commissions he is claiming. And Plaintiff is not entitled to a bonus because he was not employed at the time that the bonus was paid out. Plaintiff also erroneously contends that he is entitled to severance payment even though Plaintiff chose not to execute the very agreement which the severance payments were offered in consideration for execution.

The undisputed material facts demonstrate that Plaintiff has received all salary, commission, and benefits he was entitled to from Torrey Point during his employment. Therefore, Torrey Point's motion for summary judgment should be granted in its entirety.

1

## STATEMENT OF FACTS

Torrey Point is a software and hardware reseller and consulting firm that provides customers with design, implementation, and support for their computer networks. Complaint ¶ 6. On or about February 1, 2011, Torrey Point extended an offer letter employment agreement ("offer of employment") to Plaintiff to be employed by Torrey Point as an "Account Manager." Complaint ¶ 7, Exhibit A. Pursuant to the offer of employment, Plaintiff was "paid in monthly installments of $4,583, which is equivalent to $55,000 on an annual basis." Complaint Exh. A. The offer of employment further provided that Plaintiff would be entitled to commissions in accordance with the following plan:

> "Commissions will be paid according to the attached compensation plan against gross profits on paid revenues earned in the territory and secured by Employee. Commissions shall be deemed earned thirty days after receipt of payment by the customer. The earned commissions shall be paid at the next month ending after it has become earned…" Complaint Exh. A.

Under Torrey Point's commission plan, a commission is "earned" when the account executive has completed all of the work necessary to fulfill the customer's order, has ensured that the customer has been billed properly, and the customer has paid. Payment to the account executive is made on the last day of the month following the month in which Torrey Point receives payment from the customer. Jackson Decl. ¶ 7.

In order to earn his commission, Plaintiff was required: (a) to book the customer's order, (b) to analyze the equipment and materials necessary to fulfill the customers order, (c) to analyze the options available for fulfilling the customer's order regarding cost, quantity, and in conformance with the customer's requirements, (d) to arrange delivery to the customer's required destination, (e) to track product deliveries and shipments, (f) to monitor and invoice engineering needs, (g) to monitor performance quality, (h) to communicate product and

engineering delivery to the customer and Torrey Point, (i) to ensure proper invoicing of the customer, and (j) to follow up with the customer to ensure payment of Torrey Point's invoice. *See* Affidavit of Lindsay F. Ditlow ("Ditlow Aff."), Exhibit A, a true and correct copy of Plaintiff's job description; and Exhibit B, "Inside sales Sales Order Process once PO is received"; Jackson Decl. ¶ 8.

In the "2011-2012 Comp Plan" annexed to Plaintiff's offer of employment, Torrey Point offered a bonus of $10,000 (the "GP Bonus") if annual sales attributable to Plaintiff and another Torrey Point employee Chris Kolb exceeded more than $1,540,000 in gross profits (the "GP Floor"). Complaint Exh. A at p. 4; Jackson Decl. ¶ 9. Torrey Point's policy with respect to payment of bonuses, which Plaintiff was aware of during his employment, was that bonuses were paid out "after the end of the year." Jackson Decl. ¶ 10; Ditlow Aff., Exh. C, Deposition Transcript of William Klein ("Klein Tr."), T140:10-140:22. In order to be eligible for the GP bonus, employees were required to be employed by Torrey Point at the time the bonus is paid, which is in the first quarter of the following year. Jackson Decl. ¶ 11.

Plaintiff accepted employment as set forth in the offer of employment and commenced employment with Torrey Point on or about February 7, 2011. Complaint ¶ 8. Additionally, in connection therewith, Torrey Point granted Plaintiff's request to work from his home. Jackson Decl. ¶ 5. In connection with Plaintiff's job responsibilities, Plaintiff provided Chris Kolb with Plaintiff's independent analysis on customer accounts, analyzed customer needs, and analyzed prices and quotes based on historical quotes to the customer. Ditlow Aff. Exh. C, Klein Tr., T40:10-41:7. Many of the quotes created by Plaintiff were very complex and required a significant amount of independent analysis and judgment. Ditlow Aff., Exh. C, Klein Tr. T53:21-54:13. In addition to working with Chris Kolb on accounts, Plaintiff also managed his

3

own accounts and worked independently. Ditlow Aff. Exh. C, Klein Tr. T39:21-24. Plaintiff was not subject to day-to-day supervision, as Plaintiff worked from home each day, and would communicate with Justin Young and Chris Kolb via e-mail, telephone and instant messenger only. Ditlow Aff., Exh. C, Klein Tr. T41:8-44:4.

The nature of Plaintiff's job required him to spend whatever time it took with a customer to "get a sale." Ditlow Aff., Exh. D, Deposition Transcript of Justin Young ("Young Tr.") Tr. T35:16-20. The number of hours worked each week by account managers would vary because of the complexity of the tasks that needed to be completed, including visiting new vendors and new customers. Ditlow Aff., Exh. D, Young Tr. T34:11-36:17. Moreover, the Account Manager position at Torrey Point was never an overtime position as it could not always be completed during normal business hours and, given the complexity of customer orders and the detailed knowledge required to fulfill those orders, the work could not be easily passed on to other employees. Jackson Decl. ¶ 4.

On October 5, 2011, Plaintiff was discharged in connection with a corporate downsizing. Complaint ¶ 10. At the time of Plaintiff's termination, Plaintiff was presented with a Separation Agreement and General Release dated October 5, 2011 (the "Separation Agreement"). Ditlow Aff., Exh. E. Plaintiff declined to sign the Separation Agreement and General Release with which he had been presented. Jackson Decl. ¶ 13.

The Separation Agreement provides at paragraph 1 "Salary Continuation" as follows:

> "[i]n exchange for your agreeing to and complying the with terms of this Agreement (including the general release it contains), the Company will pay your regular salary (less customary withholdings) through October 19, 2011."

Ditlow Aff., Exh. E. The last sentence of the Separation Agreement states, "[i]f you are agreeable to the foregoing, please indicate your acceptance by signing and dating below."

Ditlow Aff. Exh. E. Torrey Point has never maintained a severance plan. Jackson Decl. ¶ 14.

After Plaintiff's termination, Torrey Point paid Plaintiff $9,584.66 in commissions that he had earned by completing all the work that was necessary to earn said commissions. Complaint ¶ 45; Jackson Decl. ¶ 15. At the time of Plaintiff's termination, Plaintiff did not complete all the work necessary to earn the remaining commissions which Plaintiff seeks in his Complaint. Ditlow Aff., Exh. D, Young Tr., T155:4-156:3; 157:4-24; Jackson Decl. ¶ 15.

Plaintiff's job was to do whatever was necessary to keep an open purchase order on track until the invoice was issued, which included checking shipping status with the supplier, providing tracking information to the customer, analyzing and resolving all discrepancies between what the customer wanted and what was actually delivered to the customer, potentially selling and delivering a service support contract to the customer, creating a support contract renewal opportunity in Salesforce, and verifying that the invoice was issued to the customer in an internal Open order call. Ditlow Aff., Exh. A and Exh. F, Amended Objections and Responses of Defendant Torrey Point Group, LLC to Plaintiff's First Set of Interrogatories, Amended Response to Request No. 9.

Specifically, Plaintiff failed to complete work which would have entitled him to commissions on the following customer accounts:

    1. Kinber - Klein only worked on this account partially. Klein put together only about 25% of the final quote, and even the work which he did perform needed to be reworked as Klein's quote was not accurate. [Torrey Point employees] Chris Donlin and Justin Young completed the work on these specific Kinber purchase orders.

    2. Lightower - Klein worked on this account only in its beginning stages, before the customer had identified their specific needs. Additionally, this account was unbooked during Klein's tenure and rebooked following his departure, and Klein did none of the work on the rebooked portion which took place in December 2011. Chris Donlin completed the work on these specific Lightower purchase orders.

    3. Synchronoss - Klein did not create any quotes for Synchronoss that were utilized in any final quote. All quotes for new orders were created and processed by Chris Donlin and Justin

Young.

4. Sungard - Following Klein's departure, Chris Donlin made approximately 120 different documents for Sungard for "quoting" purposes. Chris Donlin and Justin Young completed the work on these specific Sungard purchase orders.

5. AWCC – After Klein's departure, Chris Donlin and Justin Young ensured that the professional services and hardware that had not shipped successfully completed the process.

6. Broadview – Prior to Klein's departure, only the purchase order for professional services had been opened. Professional services purchase orders involve a long and complex process requiring communication among project management, engineering, and sales to ensure that the project gets completed on time and on budget. Professional services for Broadview are still being delivered on this large engagement that has involved multiple engineers and continued project management to the present day. Chris Donlin and Justin Young have been involved in performing inside sales roles with respect to this purchase order.

7. G4 Communications just shipped the final piece of this order in August 2012 – 10 months after Klein's departure. Justin Young was required to conduct a site visit to Juniper's Order Management location in Westford, Massachusetts to assist in processing a change in delivery location for each of the orders as the address was incorrect on the initial purchase orders from the customer. There are 6 different purchase orders, each of which had to be followed up on to be sure that it was delivered to the correct location before it was shipped. The ship dates ranged from October 12, 2011 through August 31, 2012. Chris Donlin and Justin Young have been involved with respect to these purchase orders.

8. Net@work canceled this order as this purchase order was deemed to be an error.

9. Xtium – Klein submitted the original sales order incorrectly, which had to be fixed and correctly placed with Juniper and Ingram Micro by Justin Young, who also communicated with Juniper and Chris Kolb to ensure that it was processed correctly. Justin Young also delivered the final contracts to the customer. Ditlow Aff., Exh. F.

Plaintiff is not owed any additional commission. Jackson Decl. ¶ 17.

## ARGUMENT

### 1.   Summary Judgment Standard is Met

A grant of summary judgment is appropriate when, as here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of showing

6

the absence of a disputed issue of material fact. The burden then shifts to the non-moving party to present specific evidence that demonstrates the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995). That party, however, must present more than a "scintilla" of evidence, and may not rely upon mere speculation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990). Instead, the motion can be defeated only where there is "enough evidence submitted to enable a reasonable juror to return a verdict" in favor of the party opposing the motion. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

### 2. Plaintiff is Exempt from the FLSA's Overtime Requirements as He was an Administrative Employee

The Fair Labor Standards Act ("FLSA") requires the payment of overtime pay for hours worked in excess of 40 per week, 29 U.S.C. § 207, subject to exemptions for "administrative" employees:

> The provisions of section ... 207 of this title shall not apply with respect to ... any employee employed in a bona fide ... administrative ... capacity ...

29 U.S.C. § 213(a)(1). The Secretary of Labor has expanded on the administrative exemption as follows:

> To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase 'directly related to the management or general business operations' refers to the type of

7

> work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. §541.201(a).

Here, Plaintiff's work was directly related to the servicing of Torrey Point and Torrey Point's customers. Torrey Point is a software and hardware reseller and consulting firm that provides customers with design, implementation, and support for their computer network needs. Plaintiff's role as account manager was vital to the general business operations of Torrey Point, as well as Torrey Point's customers. Plaintiff's role at Torrey Point required Plaintiff (i) to analyze the equipment and materials required for customers' computer network needs, and present all options available to the customers, (ii) to evaluate company data in order to prepare and present quotes to the customers for their orders, (iii) to book the customer orders, (iv) to arrange for delivery and to track product deliveries and shipments, and address any problems associated therewith; (v) to monitor performance quality and any engineering needs the customers' computer networks required; and (vi) to handle all aspects of invoicing to the customers, including follow-ups, if necessary.

Additionally, in order to qualify for the administrative exemption under the regulations:

> an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term "matters of significance" refers to the level of importance or consequence of the work performed.

29 C.F.R. §541.202(a). Furthermore, "[t]he exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment

8

even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. §541,202(c).

Plaintiff's job duties at Torrey Point also satisfy this requirement for application of the administrative exemption. Plaintiff exercised independent judgment and discretion in performing his duties as account manager, as described above, as Plaintiff analyzed the equipment and materials required for customers' computer network needs, presented all options available to the customers, and then based on Plaintiff's recommended course of action, evaluated company data in order to prepare and present quotes to the customers. Moreover, many of the quotes created by Plaintiff were very complex and required a significant amount of independent analysis and judgment as Plaintiff considered Torrey Point data and previous quotes made to the customers. Plaintiff also managed his own accounts and worked independently. Additionally, as Plaintiff worked from home, he was never subject to direct day-to-day supervision.

Therefore, as Plaintiff's job responsibilities primarily consisted of work directly related to the general operations of Torrey Point, required Plaintiff to exercise discretion and independent judgment, and moreover, Plaintiff was paid a salary above the minimum level, Plaintiff was exempt from the FLSA's overtime requirements pursuant to the administrative exemption. *See Zacholl v. Fear & Fear, Inc.*, 2004 WL 725964, at *1 (N.D.N.Y. Apr. 5, 2004) ("[i]n determining whether the administrative exemption applies, courts look to see if the employee's "primary duty consists of either performances of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers" and whether "such primary duty includes work requiring the exercise of discretion and independent judgment.") (internal citations omitted); *see also Romero v. H.B. Automotive*

*Group, Inc.*, 2012 WL 1514810, at *7 (S.D.N.Y. May 1, 2012).

Applying the administrative exemption to Plaintiff comports with the United States Supreme Court's explanation as to why Congress chose to exempt certain classes of employees from the FLSA's overtime requirements. Citing the Federal Register, Vol. 69, No. 79, Preamble 22124, dated April 23, 2004, which addressed all section 213 exemptions (executive, administrative, professional, and outside salesman), and the legislative history related thereto, the Supreme Court stated:

> [t]he exemption is premised on the belief that exempt employees typically earned salaries well above the minimum wage and enjoyed other benefits that set them apart from the nonexempt workers entitled to overtime pay. It was also thought that exempt employees performed a kind of work that was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime.

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2173 (2012) (internal citations and quotations omitted). The United States Supreme Court further explained, that the Petitioners – each of whom earned approximately $70,000, and worked between 10 and 20 hours per week outside of normal business hours performing work related to their assigned portfolios – are "hardly the kind of employees that the FLSA was intended to protect." And it "would be challenging, to say the least," for companies to compensate these types of employees for overtime going forward "without significantly changing the nature of that position." *Id.*

Similar to the employees in *Christopher*, Plaintiff was highly compensated for hours worked as Plaintiff received a $55,000 annual salary plus commissions, and Plaintiff's position as account manager was never an overtime position as it could not always be completed during normal business hours and, given the complexity of customer orders and the detailed knowledge required to fulfill those orders, the work could not be easily passed on to other employees.

10

Furthermore, the number of hours worked each week by account managers would vary because of the complexity of the tasks that needed to be completed, including visiting new vendors and new customers.

"The New York State Department of Labor takes the position that the overtime provisions contained in [the NYLL] expressly incorporate the FLSA's exemptions." *Romero*, 2012 WL 1514810, at *7 *quoting Chauffeured Transp. of NY, LLC,* 2012 WL 1078230, at *8 (E.D.N.Y. Mar. 30, 2012) (citing 12 N.Y.C.R.R. § 142-2.2). "Thus, if Plaintiff is subject to the FLSA's exemptions, [he] is also exempt from the NYLL's protections," and thus Plaintiff's NYLL claim should also be dismissed as a matter of law. *Id. citing Clarke v. JPMorgan Chase Bank, N.A.*, 2010 WL1379778, at *15, n. 7 (S.D.N.Y. Mar. 26, 2010).

Therefore, Torrey Point is entitled to summary judgment with respect to Plaintiff's claims for overtime compensation under both the FLSA and the NYLL.

### 3. Plaintiff is Not Entitled to Any Severance Payment as Plaintiff Did *Not* Sign the Separation Agreement and General Release

On October 5, 2011, Plaintiff was discharged in connection with a corporate downsizing. At the time of Plaintiff's discharge, Plaintiff was presented with the Separation Agreement. The Separation Agreement dated October 5, 2011 (attached to Ditlow Aff., at Exhibit E), provides at paragraph 1 "Salary Continuation," as follows:

> [i]n exchange for your agreeing to and complying the with terms of this Agreement (including the general release it contains), the Company will pay your regular salary (less customary withholdings) through October 19, 2011.

The last sentence of the Separation Agreement states, "[i]f you are agreeable to the foregoing, please indicate your acceptance by signing and dating below." Ditlow Aff., Exh. E.

Plaintiff declined to sign the Separation Agreement , and therefore under the terms of the Separation Agreement, Plaintiff was not entitled to payment of his regular salary from October 5,

11

2011 until October 19, 2011 (the "severance payment"). Additionally, Torrey Point has never maintained a severance plan. Jackson Decl. ¶ 14.

Plaintiff's failure to execute the Separation Agreement was a condition precedent to his receipt of the severance payment. As Plaintiff failed meet this condition precedent, Torrey Point is entitled to summary judgment with respect to Plaintiff's severance claim. *See Kaul v. Hanover Direct, Inc.*, 296 F. Supp. 2d 506, 516 (S.D.N.Y. 2004), wherein the court held that unless plaintiff had executed and delivered to defendant the general release he was not entitled to severance payments, as such execution was a condition precedent to receipt of the monies.

### 4. Torrey Point is Entitled to Summary Judgment on Plaintiff's Breach of Contract Claims

The elements of a cause of action for breach of contract under New York law are: "(1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting form the breach." *Tagare v. Nynex Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996).

#### a. Plaintiff did not earn the commissions sought in his complaint under the terms of Plaintiff's offer of employment.

Plaintiff cannot sustain his claim for breach of contract for failure to pay commissions against Defendant because Plaintiff cannot establish the second element of a breach of contract claim – "due performance of the contract by the plaintiff." *Id.* "As a general rule a salesman's commissions are deemed earned when orders are procured, regardless of when they may actually be filled. There may be an exception, of course, when the duties of the position include something more than mere selling." *Mott v. Good Roads Machinery Co. of New York, Inc.*, 277 A.D. 677, 783 (3d Dept. 1951); *see also Sommer v. Edward Ermold Co.*, 275 A.D. 629, 630 (1st Dept. 1949) (dismissing plaintiff's complaint which sought commissions allegedly earned prior

to plaintiff's termination as the court found that the plaintiff was no "ordinary salesman" as he was responsible for selling and servicing defendants' machines and parts in his territory, and thus commissions were not "earned" merely because a sale was procured); *Business Incentives Co., Inc. v. Sony Corp. of America*, 397 F. Supp. 63, 70 (S.D.N.Y. 1975) (plaintiff, whose employment was lawfully terminated from Sony, asserted a breach of contract claim against Sony for allegedly earned but unpaid commissions, the court held that plaintiff was not entitled to commissions on sales effected after his termination.); *Clinchy v. Grandview Dairy, Inc.*, 262 A.D. 51, 52 (1st Dept. 1941) (plaintiff broker was entitled to commissions he would have earned from insurance company following his termination because he had completed his work.).

This is the exact scenario in which the exception – for when the duties include something more than mere selling – applies. Plaintiff's job was to do whatever was necessary to keep an open purchase order on track until the invoice was paid, which included checking shipping status with the supplier, providing tracking information to the customer, analyzing and resolving all discrepancies between what the customer wanted and what was actually delivered to the customer, potentially selling and delivering a service support contract to the customer, creating a support contract renewal opportunity in Torrey Point's records, and verifying that the invoice was issued to the customer through telephone calls with the customer. Plaintiff failed to complete necessary work which would have entitled him to commissions on the following customer accounts:

> Kinber - Plaintiff only worked on this account partially. Plaintiff put together only about 25% of the final quote, and even the work which he did perform needed to be reworked as Plaintiff's quote was not accurate. Chris Donlin and Justin Young completed the work on these specific Kinber purchase orders.
>
> Lightower - Plaintiff worked on this account only in its beginning stages, before the customer had identified their specific needs. Additionally, this account was unbooked during Plaintiff's tenure

13

and rebooked following his departure, and Plaintiff did none of the work on the rebooked portion which took place in December 2011. Chris Donlin completed the work on these specific Lightower purchase orders.

Synchronoss - Plainitff did not create any quotes for Synchronoss that were utilized in any final quote. All quotes for new orders were created and processed by Chris Donlin and Justin Young.

Sungard - Following Plaintiff's departure, Chris Donlin made approximately 120 different documents for Sungard for "quoting" purposes. Chris Donlin and Justin Young completed the work on these specific Sungard purchase orders.

AWCC – After Plaintiff's departure, Chris Donlin and Justin Young ensured that the professional services and hardware that had not shipped successfully completed the process.

Broadview – Prior to Plaintiff's departure, only the purchase order for professional services had been opened. Professional services purchase orders involve a long and complex process requiring communication among project management, engineering, and sales to ensure that the project gets completed on time and on budget. Professional services for Broadview are still being delivered on this large engagement that has involved multiple engineers and continued project management to the present day. Chris Donlin and Justin Young have been involved in performing inside sales roles with respect to this purchase order.

G4 Communications just shipped the final piece of this order in August 2012 – 10 months after Plaintiff's departure. Justin Young was required to conduct a site visit to Juniper's Order Management location in Westford, Massachusetts to assist in processing a change in delivery location for each of the orders as the address was incorrect on the initial purchase orders from the customer. There are 6 different purchase orders, each of which had to be followed up on to be sure that it was delivered to the correct location before it was shipped. The ship dates ranged from October 12, 2011 through August 31, 2012. Chris Donlin and Justin Young have been involved with respect to these purchase orders.

Net@work canceled this order as this purchase order was deemed to be an error.

Xtium – Plaintiff submitted the original sales order incorrectly, which had to be fixed and correctly placed with Juniper and

14

> Ingram Micro by Justin Young, who also communicated with
> Juniper and Chris Kolb to ensure that it was processed correctly.
> Justin Young also delivered the final contracts to the customer.

Ditlow Aff., Exh. F.

As Plaintiff's job duties with respect to "earning" his commissions were not completed at the time of his discharge, Plaintiff is not entitled to commissions on these accounts. After Plaintiff's termination, Torrey Point paid Plaintiff $9,584.66 in commissions that he had earned by completing all the work that was necessary to earn the commissions.

      **b.    Plaintiff was Not an Employee at the Time Bonuses were Paid and Thus is Not Entitled to a Bonus under Defendant's Bonus Plan.**

"It is well established under New York law that an employee's entitlement to a bonus is governed by the terms of the employer's bonus plan." *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 397 (S.D.N.Y. 2011) *quoting Hall v. United Parcel Serv. Of Am., Inc.*, 76 N.Y.2d 27, 36, 555 N.E.2d 273 (1990). Plaintiff has acknowledged that he was unequivocally informed during his employment that the "GP Bonus" was paid "after the end of the year." Ditlow Aff., Exhibit C, Klein Tr. T140:10-140:22.

Additionally, in order to be eligible for the GP Bonus, employees were required to be employed by Torrey Point at the time the bonus is paid, which is in the first quarter of the following year. "Where the relevant bonus policy requires employment through a certain date and the employee was discharged before that date, the employee does not have a valid claim to the bonus." *Karmilowicz v. Hartford Financial Serv.*, 2011 WL 2936013, at *7 (S.D.N.Y. Jul., 14, 2011).

      **5.    As the Offer of Employment and Separation Agreement Govern Plaintiff's Claims, Plaintiff Cannot also Have a Quantum Meruit Claim**

A claim for quantum meruit or unjust enrichment is a quasi-contractual claim, in which

15

"an obligation [is] imposed by equity to prevent injustice, *in the absence of an actual agreement between the parties concerned."* *IDT Corp. v. Morgan Stanley Dean Winter & Co.*, 12 N.Y.3d 132, 142 (N.Y. App. Div. 2009) (emphasis added); *see also Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987) ("[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

Here, there is a contract which governs each and every one of Plaintiff's claims, and it is specifically under the terms of the agreements that Defendant is entitled to summary judgment and the Plaintiff's claims dismissed with prejudice. Therefore, as "actual agreements" exists between the parties, Plaintiff may not recover under a quantum meruit theory.

## CONCLUSION

For all the foregoing reasons, Defendant Torrey Point Group, LLC respectfully requests that the Court grant its motion for summary judgment in its entirety, dismiss the Plaintiff's complaint with prejudice, and grant such other and further relief as this Court may deem just, equitable, and proper.

Dated: New York, New York
       July 18, 2013

                                              DENTONS US LLP

                                By: _____
                                        Neil A. Capobianco
                                        Lindsay F. Ditlow
                                        1221 Avenue of the Americas, Suite 2500
                                        New York, New York  10020
                                        (212) 398-5781

                                        *Attorneys for Defendant Torrey Point Group, LLC*